UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BYRON EWING, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 4:13-CV-1757 NAB |
| | ) |
| TROY STEELE[1], | ) |
| | ) |
| Respondent. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Byron Ewing's Petition for Writ of Habeas Corpus. [Docs. 1, 7[2].] Respondent filed a response to the Petition for Writ of Habeas Corpus. [Doc. 14.] Ewing filed a Reply Brief. [Doc. 18.] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). [Doc. 13.] For the reasons set forth below, Ewing's petition for writ of habeas corpus will be denied.

**I.    Background**

On May 22, 2009, after a jury trial, Ewing was found guilty of statutory rape in the first degree, child molestation in the first degree, and sexual misconduct involving a child by indecent exposure. (Resp't Ex. B at 78-80.)

Viewing the facts in the light most favorable to the verdict the following evidence was adduced at trial:  On January 30, 2007, Michelle Johnson's ten-year old daughter (S.K.) wrote a

---

[1] During the pendency of the Petition, Troy Steele became the warden of the Eastern Reception, Diagnostic and Correctional Center. Pursuant to Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts, the Respondent is the state officer who has custody. Therefore, the Clerk of Court is ordered to add Troy Steele as the Respondent and remove Terry Russell's name.
[2] The Court ordered Ewing to file a redacted Petition that removed the names of children that he had included in his original Petition. [Doc. 5.]

letter to Johnson stating that Ewing had raped her.³ The letter S.K. gave to Johnson, later admitted into evidence without objection, stated as follows:

> Mom [Ewing] rape me I didn't tell you when he was out because he said if I tell any body he will kill you when he got put in jail you said you don't want him to be in their for life but I do and It been herting me so I'm fainly telling you so this is a relift. Your baby girl [S.K.].

Johnson called the police, and S.K. wrote a brief note to the detective, stating that Ewing pulled down her jeans and raped her.

S.K. was interviewed on February 19, 2007, at the Child Advocacy Center (CAC). S.K. told the interviewer that Ewing raped her on December 22, 2006; described the act; and said that Ewing told her not to tell anyone or he would kill Johnson. On December 22, 2006, Ewing, Johnson, S.K., Johnson's other daughters, a cousin, and an aunt, had been getting ready to travel to Boston, when Johnson took her other daughters to the store, leaving S.K. at home alone with Ewing. When S.K.'s aunt arrived at Johnson's house, S.K. ran out of the house and jumped into her aunt's van, which she refused to leave until Johnson returned from the store.

In February of 2009, S.K. was watching a video at the prosecutor's office when she wrote a note to the prosecutor, "It happened a lot of times before I formally told my mom when he was loked [sic] up." S.K. was sent back to the CAC for a second interview on February 12, 2009. S.K. told the interviewer, in detail, that Ewing had sexually assaulted her when she was in the second or third grade and staying in a motel with Johnson and Ewing. S.K. said Appellant told her not to tell anyone or Johnson would get mad. S.K. also recounted another occasion when she was in the basement with Ewing when he masturbated to ejaculation.

---

[3] These facts are taken directly from the Supplemental Memorandum accompanying the Missouri Court of Appeals decision in Ewing's direct appeal. *See* Resp't Ex. F. A state court's determination of a factual issue shall be presumed to be correct. 28 U.S.C. § 2254.

After the jury found Ewing guilty, the trial court sentenced him as a prior and persistent offender, to natural life in prison without the possibility of probation or parole on count I for rape of a child, fifteen years for count II for child molestation, and four years for Count III for indecent exposure. (Resp't Ex. B at 91-93.) All of the sentences run concurrently. (Resp't Ex. B at 92.)

## II.     Standard of Review

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law. Judges must be vigilant and independent in reviewing petitions for the writ, a commitment that entails substantial judicial resources." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). "In general, if a convicted state criminal defendant can show a federal habeas court that his conviction rests upon a violation of the Federal Constitution, he may well obtain a writ of habeas corpus that requires a new trial, a new sentence, or release." *Trevino v. Thaler*, 133 S.Ct. 1911, 1917 (2013). The Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA) applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to 28 U.S.C. § 2254, a federal court is limited to deciding whether a claim that was adjudicated on the merits in state court proceedings (1) resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

For purposes of § 2254(d)(1), the phrase "clearly established federal law refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). "In other words, clearly established federal law under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id.* at 72. To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or unreasonably applied. *Buchheit v. Norris*, 459 F.3d 849, 853 (8th Cir. 2006).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)). A state court decision is an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case. *Id.* (citing *Williams*, 529 U.S. at 407–408). "A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Penry*, 532 U.S. at 793. "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Evanstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006). A "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Woodford v.*

4

*Visciotti*, 537 U.S. 19, 24 (2002). AEDPA's highly deferential standard demands that state court decisions be given the benefit of the doubt. *Id.*

## III. Discussion

Ewing presents five issues for review. First, he claims ineffective assistance of counsel, because trial counsel failed to call Officer Alim Poindexter as a witness to refute the testimony of the complaining witnesses. He also contends counsel failed to impeach the credibility of state's witness Michelle Johnson on two convictions of false burglary charges. Next, Ewing presents three claims of trial court error. Ewing alleged that the trial court should have declared a mistrial during the state's opening statement to the jury panel. Then, Ewing asserts that the trial court erred by allowing the state to argue to the jury about Ewing's failure not to testify. Finally, Ewing contends the trial court erred when it overruled his objections to the state's misstatement of facts in the closing argument. Respondent contends that Ewing's claims lack merit and the habeas petition should be denied.

### A. Ineffective Assistance of Counsel

"The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "An accused is entitled to be assisted by an attorney, whether retained or appointed who plays the role necessary to ensure that the trial is fair." *Id.* To succeed in a claim "that counsel's assistance was so defective as to require reversal of a conviction," a petitioner must establish (1) that the trial counsel's performance fell below an objective standard of reasonableness and (2) that this deficient performance prejudiced the Petitioner's defense. *Strickland*, 466 U.S. at 687-88.

5

The "performance" component of *Strickland* requires a showing that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To satisfy this prong, a petitioner must first identify the specific acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Id.* at 690. The court must then examine the totality of the circumstances in order to determine whether "the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* In making this determination, the court should recognize that trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* "Miscues and omissions are inevitable in any case and there is no such thing as a perfect trial." *Medearis v. U.S.*, 469 F.Supp.779, 785 (D.S.D. 2006).

To satisfy the "prejudice" component of *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Such "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In determining whether prejudice exists, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695. Further, the court "should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge and jury acted according to [the] law." *Id.* at 694.

It is important to note that "there is no reason for a court deciding an ineffective assistance claim to approach the [two-pronged] inquiry in [a pre-determined] order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. It is unnecessary, therefore, to prove that counsel's performance fell

below an objective standard of reasonableness before determining the presence or absence of resulting prejudice.

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citing *Cullen v. Pinholster*, 563 U.S. 170) (2011)). "First, under *Strickland*, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is reasonably likely that the result would have been different absent the errors." *Williams*, 695 F.3d at 831 (citing *Strickland*, 466 U.S. at 696)). "To satisfy Strickland, the likelihood of a different result must be substantial not just conceivable." *Id.* Second, under AEDPA, the Court must give substantial deference to the state court's predictive judgment. *Id.* Therefore, "[s]o long as the state court's decision was not "contrary to" clearly established federal law, the remaining question under the "unreasonable application" clause of § 2254(d) is "whether the state court's determination under the *Strickland* standard is unreasonable, not merely whether it is incorrect." *Id.* at 831 (*citing Harrington*, 562 U.S. 86 at 101). This standard is difficult, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102.

### 1. Failure to Call Officer Alim Poindextor as a Witness

In his first ineffective assistance of counsel claim, Ewing states that his trial counsel erred by failing to call Officer Alim Poindexter to refute the testimony of Michelle Johnson and S.K. Officer Poindexter's police report stated that Johnson and S.K. reported to him that the rape occurred between 10:00 a.m. and 2:00 p.m. on December 22, 2006. At trial, witnesses Winfield Odo and Sue Muehling, testified that time cards from his employer reflected that Ewing was at

work during that time period. (Resp't Ex. A at 527-548[4].) On cross-examination, Johnson and S.K. testified that they did not tell police that the rape occurred between 10:00 a.m. and 2:00 p.m. (Resp't Ex. A at 321-22, 448-49.) Johnson stated that she did not hear S.K. tell the police that the rape occurred between 10:00 a.m. and 2:00 p.m. (Resp't Ex. A at 571.) Before closing arguments, the state filed a motion in limine requesting that the defense not be allowed to argue any contents of a police report that were not in evidence or the time frame of 10:00 a.m. to 2:00 p.m. that was in the police report during closing argument. (Resp't Ex. A at 605-606.) Defense counsel responded that the police report had not been entered into evidence and she could not refer to something that was not in evidence. (Resp't Ex. A at 606.) The trial court judge sustained the motion in limine that counsel for the defense would be unable to argue the contents of a police report or a time frame of 10:00 a.m. to 2:00 p.m. during closing argument. (Resp't Ex. A at 606, Ex. B at 55.)

After his conviction, Ewing filed a motion to vacate, set aside, or correct judgment or sentence, which was later amended. (Resp't Ex. H at 5-18, 67-82.) The post-conviction motion court held an evidentiary hearing. (Resp't Ex. G.) Ewing's trial counsel testified that Officer Poindexter was not a necessary witness, because she believed she did a "pretty good job" of getting the jury curious about the timing issue by holding up the police report and cross-examining Johnson and S.K. about the time. (Resp't Ex. G at 29-30.) The post-conviction motion court denied Ewing's motion. (Resp't Ex. H at 88-92.) The Missouri Court of Appeals found that Ewing's counsel did not render ineffective assistance for failing to call Officer Poindexter. (Resp't Ex. K at 3-5.) In its opinion, the court of appeals held that Ewing failed to meet his burden to show that Officer Poindexter would have been able to testify or what his testimony would have been. (Resp't Ex. K at 4.) Further, the court of appeals found that even if

---

[4] For ease of reference, the Court will use the page numbers at the bottom of Exhibit A for citation purposes.

Officer Poindexter had testified, there was still reasonable evidence to conclude that trial counsel made a reasonable strategic decision not to call Officer Poindexter as a witness. (Resp't Ex. K at 4.)

Ewing contends that the testimony of Officer Poindexter was vital to his defense. He asserts that had trial counsel called Officer Poindexter, there is no doubt whatsoever that the jury would have completely disbelieved Johnson's and S.K.'s version and there is a reasonable probability that the outcome of the trial would have been different.

Trial counsel's failure to call witnesses is presumed to be reasonable trial strategy. "Decisions relating to witness selection are normally left to counsel's judgment and this judgment [should not] be second guessed on hindsight." *Williams v. Armontrout*, 912 F.2d 924, 934 (8th Cir. 1990). An attorney's decision not to interview or call a particular witness must be viewed from the perspective of counsel at the time the decision was made. *United States v. Williams*, 562 F.3d 938, 941 (8th Cir. 2009). "To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony would have probably changed the outcome of the trial." *Siers v. Weber*, 259 F.3d 969, 974 (8th Cir. 2001). "In conducting this analysis, [the Court considers]: (1) the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution." *Id.* There is no prejudice if, factoring in the uncalled witnesses, the government's case remains overwhelming. *Armstrong v. Kemna*, 590 F.3d 592, 605 (8th Cir. 2010).

Based on a review of the record below, the Court finds that habeas relief should be denied on this claim. As stated by the court of appeals, Ewing has provided no evidence that

Officer Poindexter would have testified or what his testimony would have been. Further, assuming that Officer Poindexter had testified that S.K. and Johnson had reported the 10:00 a.m. to 2:00 p.m. time frame to him, this issue was explored on S.K. and Johnson's cross-examination. S.K. said she did not remember telling him a time frame and Johnson stated that neither she nor S.K. reported that time frame to Officer Poindexter. Therefore, the jury still would have had to make a credibility determination regarding who they believed. Officer Poindexter's potential testimony viewed in light of the other testimony and evidence presented would not have likely changed the outcome of the trial. Therefore, the Court will deny relief on this claim.[5]

### 2. Failure to Impeach Witness

Next, Ewing contends that his trial counsel was ineffective for failure to impeach Johnson's credibility regarding Johnson's alleged convictions for filing false burglary charges against him. "A failure to impeach constitutes ineffective assistance when there is a reasonable probability that, absent counsel's failure, the jury would have had reasonable doubt of the petitioner's guilt." *U.S. v. Orr*, 636 F.3d 944, 952 (8th Cir. 2011) (citing *Whitfield v. Bowersox*, 324 F.3d 1009, 1018 (8th Cir. 2003)).

During trial, Ewing's trial counsel questioned Johnson regarding her federal conviction for bank fraud. (Resp't Ex. A at 331-32.) Ewing's trial counsel also questioned Johnson regarding fraudulently using her niece's food stamps. (Resp't Ex. A at 324-25.) At the post-conviction evidentiary hearing, Ewing's trial counsel testified that she believed she adequately impeached Johnson. (Resp't Ex. G at 22-23.) Ewing's counsel also testified that she did not

---

[5] In his Reply Brief (Traverse), Ewing attempts to add a claim for ineffective assistance of post-conviction counsel against his initial post-conviction counsel for failure to produce Officer Poindexter at the post-conviction evidentiary hearing. The Court will not address this claim as it was not raised below and is not cognizable in a federal habeas petition. *See* 28 U.S.C. § 2254(i)(the ineffectiveness or incompetence of counsel during Federal or state collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254).

bring up the false burglary charges, because she felt boyfriends and girlfriends make false accusations all the time and the federal conviction and illegal food stamps presented more of a credibility issue for Johnson. (Resp't Ex. G at 22-24, 31.) Ewing's counsel also testified that she wanted to avoid the jury knowing that Ewing had been incarcerated on a parole violation at the time of some of the events at issue. (Resp't Ex. G at 18-21, 24-25.) The post-conviction motion court denied relief on this claim. (Resp't Ex. H at 91.) The Missouri Court of Appeals found that additional evidence of a false burglary accusation would not likely have changed the outcome of the trial in light of the other evidence. (Resp't Ex. K at 5-6.)

After a review of all of the evidence adduced at trial, the Court finds that trial counsel's decision not to impeach Johnson regarding the allegedly false burglary accusations was a reasonable strategic choice. It is highly unlikely that the outcome of the trial would be different if the jury knew that Johnson had allegedly lied about a false burglary after an argument with Ewing, especially in light of the more substantial credibility issues of fraudulently using food stamps and being convicted of bank fraud in federal court. Therefore, the Court will deny relief on this claim.

### B. Trial Court Error

Next, the Court will address Ewing's assertions of trial court error. "In the habeas context, rules of evidence and trial procedure are usually matters of state law." *Bucklew v. Luebbers*, 436 F.3d 1010, 1018 (8th Cir. 2006). "It is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so

prejudicial as to amount to a denial of due process." *Bucklew*, 436 F.3d at 1018. In making this determination, the federal habeas court "must review the totality of the facts in the case and analyze the fairness of the particular trial under consideration." *Hobbs v. Lockhart*, 791 F.2d 125, 128 (8th Cir. 1986). "Rulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation." *Nebinger v. Ault*, 208 F.3d 695, 697 (8th Cir. 2000).

### 1. Failure to Declare Mistrial

First, Ewing asserts that the trial court erred when it failed to declare a mistrial after the prosecutor made a comment in her opening statement that Ewing was in jail before the rape charges in the underlying case were filed. Before trial, Ewing filed a written motion in limine that included a request that stated the following:

> That the Assistant Prosecutor should be ordered not to refer to any prior pleas of guilty, commission of any prior bad acts, nor any pending criminal charges, nor any acts or crimes not yet charged in this or any other Circuit Court during voir dire, and/or opening and/or closing statements, and/or direct and/or cross examination of witnesses.

(Resp't Ex. B at 52.) The word "sustained" is written next to the text of that paragraph. (Resp't Ex. B at 52.) The record does not indicate that this motion was discussed on the record. During the state's opening statement, the prosecutor said the following: "Mid to late January [S.K.] learns that Byron is incarcerated at the St. Louis County jail. And so as a result of that--." (Resp't Ex. A at 245.) Then, Ewing's attorney objected and asked for a mistrial, asserting that the prosecutor's statement was in direct opposition to the motion in limine that there be no mention that Ewing was incarcerated. (Resp't Ex. A at 245-46.) At sidebar, the trial judge stated that there was a misunderstanding, but he denied the request for a mistrial. (Resp't Ex. A at 246.) A couple of minutes later, the prosecutor stated in reading S.K.'s letter, "I didn't tell

you when he was out because he said if I tell anybody, he will kill you. When he got put in jail, you said you don't want him to be in there for life, but I do. And it been hurting me, so I am finally telling you." (Resp't Ex. A at 247.) Defense counsel again objected. (Resp't Ex. A at 247.) Defense counsel objected because the prosecutor was reading from the entire letter and it had not been received into evidence. (Resp't Ex. A at 247-48.) Defense counsel did not ask for a mistrial. The trial court instructed the state's attorney to move on and not to use any exhibits. (Resp't Ex. A at 248.) On direct appeal, the Missouri Court of Appeals found that the trial court did not abuse its discretion in denying the motion for a mistrial, because the prosecutor's statement did not refer to a specific crime that Ewing committed therefore there was a vague reference and indefinite reference to an unspecified crime. (Resp't Ex. F at 8.) The court of appeals found that the evidence was relevant and admissible for the purpose of explaining why S.K. waited for more than a month to report the rape and was not made to show Ewing had a propensity to commit crimes. (Resp't Ex. F at 8.)

"As a general rule, prosecutorial misconduct does not warrant federal habeas relief unless the misconduct infected the trial with enough unfairness to render petitioner's conviction a denial of due process." *Louisell v. Dir. of Iowa Dept. of Corr.*, 178 F.3d 1019, 1023 (8th Cir. 1999). "To amount to a due process violation, improper remarks by a prosecutor must be so egregious that they fatally infect the proceedings and render a defendant's trial fundamentally unfair." *Stringer v. Hedgepeth*, 280 F.3d 826, 829 (8th Cir. 2002). "In evaluating whether a trial error resulted in prejudice of the defendant, [the court] consider[s] the cumulative effect of such misconduct, the strength of the properly admitted evidence of the defendant's guilt, and the curative actions taken by the trial court." *Louisell*, 178 F.3d at 1024. "A petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial

–i.e., that absent the alleged impropriety the verdict probably would have been different." *Stringer,* 280 F.3d at 829. "Every improper or erroneous statement by a prosecutor does not necessarily present a constitutional violation." *Leisure v. Bowersox*, 990 F.Supp. 769, 815 (E.D. Mo. 1998).

The Court finds that the prosecutor's statements from S.K.'s letter did not fatally infect the trial and render Ewing's trial fundamentally unfair. S.K.'s testified that she wrote the letter and it was admitted into evidence during her testimony. (Resp't Ex. A at 422-23.) The prosecutor read directly from the letter. (Resp't Ex. A at 247.) Therefore, even if it was improper to mention the letter's contents in the opening statement, the fact that the prosecutor mentioned it in opening statement did not prejudice Ewing. The same information was subsequently introduced during the victim's testimony during the trial. Therefore, the Court will deny relief on this claim.

### 2. Reference to Right Not to Testify

Second, Ewing states that the prosecutor made an indirect reference to his failure to testify during closing argument, by stating, "You have not heard anything that's contradicted what [S.K.] said." (Resp't Ex. A at 638.) In open court, defense counsel immediately objected, "Your Honor, again, I am going to object that inference that somehow my client should have testified. That is absolutely incorrect." (Resp't Ex. A at 638.) The trial court overruled the objection. (Resp't Ex. A at 638.) The Missouri Court of Appeals found there was no direct reference to Ewing's failure to testify. (Resp't Ex. F at 9.) The court of appeals also found that comments on a defendant's failure to offer evidence is not improper.

The United States Supreme Court has held that a prosecutor's direct reference to a accused's failure to testify violates the Fifth Amendment to the Constitution. *Griffin v.*

*California*, 380 U.S. 609, 612-15 (1965). "[The] Supreme Court has never clearly established, [however], that a prosecutor may not comment on the evidence in a way that indirectly refers to the defendant's silence. *Edwards v. Roper*, 688 F.3d 449, 460 (8th Cir. 2012); *cert. denied*, 134 S.Ct. 58 (2013). In this case, the prosecutor's comment did not directly reference Ewing's failure to testify. The comment would not be naturally taken by the jury as a comment on Ewing's failure to testify. The prosecutor's comment could be seen as a reference to the "clarity and strength of the state's evidence, and not as a constitutionally prohibited reference to Ewing's silence." *Herndon v. Norman*, No. 4:09-CV-1889 TCM, 2013 WL 1282250 at *15 (E.D. Mo. Mar. 26, 2013). Based on the transcript, it appears that defense counsel inferred the statement referenced Ewing's right not to testify and she presented the inference before the jury in open court. Ewing has also not shown that there is a reasonable probability that the comment affected the outcome of the trial and that absent the prosecutor's statement that the verdict probably would have been different. Therefore, the Court will deny relief on this claim.

### 3. Objections During Closing Argument

Finally, Ewing contends that the trial court violated his constitutional rights by overruling his objection to misstatements of fact in the state's closing argument regarding committing acts of violence against Johnson. Ewing contends that the trial court erred by failing to sustain the objection and provide a corrective instruction. During closing argument, the prosecutor stated, "She has been exposed to arguments where she has witnessed violence and anger from the defendant towards her mother." (Resp't Ex. A at 614.) Defense counsel objected and the objection was overruled. (Resp't Ex. A at 614.) In Ewing's closing argument, defense counsel stated that

> There was never any violence as Ms. Kilgore said because
> she was asked specifically was there ever any physical

> contact between you, and she said no. She said he broke a
> window out and reached in so he could come in … but there
> was no violence that she was scared of Byron. She never
> saw any violence between Byron and her mom.

(Resp't Ex. A at 631.) The Missouri Court of Appeals denied habeas relief on this claim stating that the prosecutor's comments were not factually inaccurate, because breaking a window and using physical force to re-enter a home is a violent act. (Resp't Ex. F at 12.) The court of appeals held that the prosecutor has a right to argue the evidence and the prosecutor's statement was a reasonable inference from that evidence. (Resp't Ex. F at 12.) Further, the court of appeals found that defense counsel rebutted and corrected any misrepresentation of physical violence towards Johnson in her closing argument. (Resp't Ex. F at 12.)

The Court will deny relief on this claim, because there is no evidence of a federal constitutional violation. First, there was no misstatement of the evidence. As the court of appeals found, physically violent actions do not have to be upon a person. Breaking a window and forcible entry into a home are violent acts. Second, defense counsel reminded the jury that Johnson testified that Ewing did not physically assault her. Ewing failed to show that there was a reasonable probability that the prosecutor's comment affected the outcome of the trial and that absent the prosecutor's comment that the verdict probably would have been different. Therefore, the Court will deny relief on this claim.

## IV. Conclusion

Based on the foregoing, the Court finds that Ewing's request for relief pursuant to 28 U.S.C. § 2254 should be denied. The Court finds that the state court's findings and conclusions regarding Ewing's claims were not contrary to, nor do they involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable determination of the facts in light

of the evidence presented in the state court proceedings. Further, because Ewing has made no showing of denial of a constitutional right, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson,* 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk of Court shall substitute Troy Steele in place of Terry Russell as Respondent.

**IT IS FURTHER ORDERED** the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. [Docs. 1, 7.]

**IT I IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Byron Ewing for a Certificate of Appealability will be **DENIED**.

Dated this 28th day of September, 2016.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE